

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9406 | **DATE** | 7/24/2002 |
| **CASE TITLE** | Michael Credit vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted. Enter memorandum and order.
(15-1 and 16-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUL 25 2002 | |
| | Notified counsel by telephone. | date docketed | 21 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| SLB | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL CREDIT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | No. 01 C 9406 |
| -vs- ) | |
| ) | |
| ) | JUDGE GEORGE W. LINDBERG |
| JO ANNE B. BARNHART, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | **DOCKETED** |
| Defendant. ) | |
| | JUL 2 5 2002 |

## MEMORANDUM AND ORDER

Plaintiff, Michael Credit, brought an action seeking judicial review of a decision by defendant Jo Anne B. Barnhart, Commissioner of the Social Security Administration ("Commissioner"), which denied plaintiff Supplemental Security Income ("SSI") benefits. See 42 U.S.C. § 405(g) (West 2002). Plaintiff also seeks attorney's fees pursuant to 28 U.S.C. § 2412. Both parties have filed motions for summary judgment.

In order to qualify for SSI benefits, a claimant must be disabled as defined in the Social Security Act. 42 U.S.C. § 1382(a)(3)(A). Social Security regulations outline a five-step inquiry which the Commissioner follows in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)-(f). The Commissioner must determine: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals one listed by the Commissioner; (4) whether the claimant can perform his or her past

work; and (5) whether the claimant is capable of performing any work in the national economy. Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993). Both parties agree that plaintiff meets the first and second requirements, but does not meet the third. When a claimant meets steps one and two, but not three, then analysis of the fourth and fifth steps is required to evaluate disability. Id. The claimant has the burden of proof to show that he cannot perform his past work, but the burden shifts to the Commissioner to show that the claimant can perform some other job in the economy. Id.

"Judicial review of administrative decisions is deferential. A decision supported by substantial evidence must be enforced." Kendrick v. Shalala, 998 F.2d 455, 458 (7th Cir. 1993). Having carefully reviewed the administrative record, the court determines that the Commissioner's decision denying plaintiff of SSI benefits is reversed and the cause is remanded for rehearing pursuant to sentence four of 42 U.S.C. § 405 (g).

Plaintiff suffers from a severe left knee impairment. He has undergone eleven surgical procedures since the initial injury, which occurred on his job as a UPS package deliverer/driver in 1992. Plaintiff has been cared for from 1992 to the present by a single treating physician, who is an orthopedic surgeon. According to the treating physician's records, plaintiff showed progress in flexibility and strength from 1992 onwards, until an accident in 1999 when plaintiff stepped into a hole, twisted his knee, and aggravated the injury. Afterwards, plaintiff complained of decrease in mobility and increase of pain in the knee. While the treating physician could not discern any new problems after a Magnetic Resonance Imaging (MRI), plaintiff did have arthroscopic surgery to repair a torn meniscus in August of 1999, and three Synvisc injections to

help rebuild cartilage in late 1999 and early 2000. To reduce pain, described as constant but varying from an 8/10 level in 1999 to a 4/10 level when wearing a supportive brace in April of 2000, plaintiff has been taking 500 mg of Vicodin every four to six hours for four years. Plaintiff also regularly attended aquatic and land-based physical therapy sessions from August of 1999 to at least June of 2000, and stated that, pursuant to his physical therapist's verbal instructions, he was to administer ice to his knee for thirty minutes every two to four hours to help alleviate pain and swelling. Plaintiff wished to have a knee replacement, but the treating physician had advised against such surgery until the plaintiff is at least 35 years old, in December of 2001.

The plaintiff is a high school graduate and father of five children, with custody of two children, ages eight and eleven at the time of the hearing. While he cooks simple meals, his mother and children do laundry and cleaning. He does some grocery shopping and is active in church.

The 1992 injury ended plaintiff's six years of employment at United Parcel Service. Unable to continue the heavy delivery work, plaintiff was subsequently employed in light work as a machine operator for approximately one month in July of 1998. In April of 2000, he worked for the Illinois Department of Human Services, was unable to carry 25 to 30 pound file boxes due to his impairment, and his employment there ended 20 minutes after it began. Plaintiff also had experience as a retail sales clerk.

After the SSI hearing on July 25, 2000, the Administrative Law Judge ("ALJ") held that plaintiff: (1) had not engaged in substantial gainful activity since the onset of the disability; and

(2) had a severe impairment of the left knee, that (3) did not meet a listed impairment. The ALJ also held: (4) that the plaintiff could return to his past work as a machine operator or sales clerk; and (5) that there were a significant number of jobs in the economy which the plaintiff could do despite the limitations of his impairment. The ALJ based his decision on a residual functioning capacity ("RFC") assessment by a reviewing Disability Determination Services ("DDS") physician on December 13, 1999, which was consistent with assessments made by the treating physician in 1995 and 1996, but not consistent with the treating physician assessments made in 1999 or 2000. The most important differences were between the assessments of plaintiff's postural limitations, where the reviewing physician reported that plaintiff could frequently (two-thirds of an eight hour work day) climb stairs, balance, stoop, kneel, crouch, and crawl; while the treating physician reported that plaintiff was not able to bend, squat, crawl, climb or reach. The ALJ also held that the plaintiff's allegations regarding pain and disabling limitations were not credible when compared against the objective medical evidence, his ability to care for his children, and his minimal pursuit of treatment from July 1996 through June 1999.

At the July 25, 2000 SSI hearing before the ALJ, a Vocational Expert ("VE") was asked whether a hypothetical person having the limitations described by the DDS physician would be able to return to past work as a machine operator or sales clerk. The VE answered affirmatively. The question was then posed whether the hypothetical person having the RFC set forth by the May 2, 2000 treating physician's evaluation would be able to return to a machine operator or sales clerk position. The VE answered that he would not.

"A treating physician's opinion is entitled to controlling weight if it is well supported by

medical findings and not inconsistent with other substantial evidence in the record." Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001) citing 20 C.F.R. § 404.1527(d)(2). Furthermore, "the longer a treating source has treated [the claimant,] . . . the more weight . . . [will be] given to the source's medical opinion. When the Treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the] impairment, [the Commissioner] will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 416.927 (d)(2)(i) (2002). See also 20 C.F.R. § 416.927 (d)(2)(ii) (2002). Additionally, 20 C.F.R. § 416.927 (d)(5) (2002) states that more weight will be given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." Plaintiff's treating physician is an orthopedic surgeon who has been treating the injury and performing some, if not all, of the related surgeries over a nine year period. There is no evidence that the reviewing physician was anything other than a general practitioner who examined plaintiff on one occasion.

Treating physician opinions, however, may be found to be not credible by an ALJ, due to bias or lack of expertise in evaluating disability. Dixon, 270 F.3d at 1177. When the opinions of reviewing and treating physicians conflict, "the ALJ may decide whom to believe, so long as substantial evidence supports that decision." Id. at 1178. See also Books v. Chater, 91 F.3d 972, 979 (7th Cir. 1996). The ALJ in this case did not make a credibility determination of the treating physician's opinion, and gave no rationale for favoring the reviewing physician's assessment over the treating physician's 2000 assessment. This makes it impossible for the court to "track the ALJ's reasoning [to] be assured that the ALJ considered the important evidence." Green v.

5

Shalala, 51 F.3d 96, 101 (7th Cir. 1995).

While this court may not reweigh the evidentiary findings of the ALJ, see e.g. Powers v. Apfel, 207 F.3d 431, 434-35 (7th Cir. 2000), it may find that the lack of reasoned explanation for implicitly disregarding the assessments of the treating physician did not meet the minimal articulation standard. Given the language in 20 C.F.R. § 416.927 (d)(2)(i) and (ii) granting controlling weight to treating physician and specialist opinions absent reasons to find such opinions lacking in credibility, the ALJ did not present substantial evidence to support his finding at step 4.

As to the fifth step, whether jobs exist in significant numbers in the economy, the burden of proof falls on the Commissioner. Pope, 998 F.2d at 477. The VE was asked whether or not there would be other jobs in the economy which a hypothetical person with the limitations listed in the treating physician's report could be expected to adjust to and perform. The witness responded that there would be 8000 production assembler jobs, approximately 9,000 machine tenders jobs, 24,000 cashiers/ticket sellers, 10,000 general clerks and helpers, and 3200 inspector/checker/weigher jobs. On cross examination, the VE also testified that if the hypothetical individual were unable to 'stoop' at all, this occupational base would be significantly eroded.

Firstly, although the treating physician's RFC assessment did not state that plaintiff could not stoop, (for lack of an appropriate category on the prepared form), the assessment did indicate that plaintiff was unable to bend, squat, or reach. Stooping, defined as "to bend the body forward or in a crouch," Webster's New World Dictionary 1321 (Victoria Neufeldt ed., 3rd college ed.,

6

Simon & Schuster 1988), would seem to be a combination of bending, squatting, and reaching. Given the necessity of re-evaluation of the physician opinions on remand, the ALJ should consider whether a determination of this postural limitation can be made with the evidence at hand. If it is found that plaintiff has a complete inability to stoop, then a finding of disability will most likely follow. See 61 Fed. Reg. 34478, (July 2, 1996).

The ALJ cited plaintiff's daily activities and ability to care for his children as a reason for finding plaintiff's allegations of disability not credible. This court will not disturb an ALJ's credibility determination, so long as there is some support in the record. See Herron v. Shalala, 19 F.3d 329, 335 (7th Cir. 1994). However, in the case at hand, as the Seventh Circuit found in Zurawski v. Halter, "the ALJ should have explained the 'inconsistencies' between [plaintiff's] activities of daily living . . . , his complaints of pain, and the medical evidence." 245 F.3d 881, 887 (7th Cir. 2001) citing Clifford, 227 F.3d at 870-72. Furthermore, "minimal daily activities . . . do not establish that a person is capable of engaging in substantial physical activity." Clifford, 227 F.3d at 872. See Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993). The record does not indicate that plaintiff did much more than cook simple meals or make the occasional trip to the grocery store. The record does indicate that plaintiff's children and mother do the cleaning and laundry, as he is unable to. Without further articulation on the part of the ALJ, the plaintiff's daily activities do not constitute support for discrediting his claims.

The ALJ's credibility determination based on the gap in treatment from 1996-1998 is of little moment under the circumstances. Plaintiff applied for SSI in August of 1999 after the aggravation of the injury. While medical records from before this time period are helpful to gain

7

a full understanding of plaintiff's claims, they do not necessarily reflect the plaintiff's current condition. The ALJ does not explain how this gap in treatment sheds any light on the current condition. Therefore, without further articulation on the part of the ALJ, the gap in treatment does not constitute support for discrediting plaintiff's claims.

The VE also testified that if the claim of the need for ice on the knee every two to four hours were true, then plaintiff would be unemployable. Furthermore, if the claim of need for prescription pain medication were true, plaintiff would unemployable. Either of these two claims would be sufficient to prevent the plaintiff from working any jobs in the economy. The allegation of the need for ice is not supported in any of the physician or physical therapist reports. Indeed, plaintiff testified that his treating physician was unaware of the constant ice applications. Therefore, it was reasonable for the ALJ to have found this claim was not credible, and this court will not disturb that finding. The claims of pain, and the need for medication to alleviate that pain, however, have support in the medical evidence.

While the ALJ did not sufficiently articulate his reasoning for finding plaintiff's allegations not credible in determining disability, he also ignored an important line of evidence that should have been considered in making that determination. "Factors that *must* be considered, [when determining claimants credibility in regards to claims of pain], include the . . . dosage and effectiveness of any pain medications[.]" Luna v. Shalala, 22 F.3d 687, 691 (7th Cir. 1994) (emphasis added). The ALJ points to the June 8, 2000 physical therapist report as the basis for not finding the plaintiffs allegations of pain to be credible. In that report plaintiff described the pain as moderate during activity. However, the objective findings of that report

8

further state that the pain was moderate during activity and at rest, and that the pain levels have remained unaffected by therapeutic intervention. Furthermore, the therapist recommended that therapy continue, and that plaintiff would require a new prescription to do so. The only prescription medication that appears in the record during that time is Vicodin.

The ALJ may not "select and discuss only that evidence that favors his ultimate conclusion." Herron, 19 F.3d. at 333. "[I]f conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict." Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995). The ALJ, in this case, did not resolve the conflict. Instead, he focused on a few phrases in the June 8, 2000, physical therapist report, and ignored language in the same report that did not favor his conclusion. The uncontested evidence was that plaintiff was taking Vicodin for his knee pain as prescribed by his physician and that there are no jobs in the national economy plaintiff could perform while taking Vicodin. The determinative question is whether plaintiff's pain would be sufficiently severe that he could not work without taking pain medication. This question was wholly unaddressed by the ALJ. While neither this court, nor the ALJ, should attempt to "play doctor", see e.g. Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996), nor does the ALJ need discuss all side effects of all medication in making his decision, see e.g. Herron, 19 F.3d at 335, in the case at hand the ALJ did not sufficiently examine this important line of evidence in assessing whether the plaintiff would be able to perform a job in the economy --an assessment where the burden of proof lies with the Commissioner.

ORDERED: Defendant Jo Anne B. Barnhart's motion for summary judgment is denied. Plaintiff Michael Credit's motion for summary judgment is granted. Pursuant to sentence four,

42 U.S.C. § 405 (g), the decision of the Commissioner is reversed and the cause is remanded for rehearing.

ENTER:

_____
GEORGE W. LINDBERG
Senior U.S. District Judge

DATED: JUL 2 4 2002